**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

JANE DOE,

          Plaintiff,

     v.

JAYLEN BROWN, JASON TATUM,[1]
MARCUS SMART and BOSTON CELTICS,

        Defendants.

C.A. No. 1:24-cv-11561-LTS

**MEMORANDUM OF LAW**
**IN SUPPORT OF BANNER SEVENTEEN, LLC'S MOTION TO DISMISS**

---

[1] Plaintiff has misspelled Jayson Tatum's name in the case caption. This memorandum will refer to Mr. Tatum by his correct name.

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

ALLEGED FACTS AND PROCEDURAL BACKGROUND ..................................................... 2

ARGUMENT .............................................................................................................................. 6

I.      STANDARD OF REVIEW ............................................................................................... 6

II.     PLAINTIFF'S TWO CLAIMS SPECIFIC TO BANNER SEVENTEEN
        SHOULD BE DISMISSED BECAUSE PLAINTIFF WAS NOT OWED A
        LEGAL DUTY AND NO BENEFIT WAS EVER CONFERRED ON BANNER
        SEVENTEEN ..................................................................................................................... 7

    A.    PLAINTIFF'S CLAIM FOR NEGLIGENCE (COUNT IV) SHOULD BE DISMISSED
         BECAUSE BANNER SEVENTEEN DID NOT OWE PLAINTIFF A LEGAL DUTY ................. 7

    B.    PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT (COUNT VI) SHOULD BE
         DISMISSED BECAUSE PLAINTIFF DID NOT CONFER ANY BENEFIT ON BANNER
         SEVENTEEN ................................................................................................................. 12

III.    PLAINTIFF'S REMAINING CLAIMS AGAINST BANNER SEVENTEEN
        SHOULD BE DISMISSED BECAUSE BANNER SEVENTEEN IS NOT
        VICARIOUSLY LIABLE FOR THE CONDUCT ALLEGED ................................... 13

    A.    PLAINTIFF HAS FAILED TO MEET THE NOTICE REQUIREMENTS OF FED. R. CIV.
         P. 8(A) ......................................................................................................................... 13

    B.    BANNER SEVENTEEN IS NOT VICARIOUSLY LIABLE FOR THE CONDUCT OF
         PERSON A, PERSON B, OR THE PLAYER DEFENDANTS ............................................... 14

CONCLUSION ....................................................................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................6

*Blake v. Professional Coin Grading Serv.*,
898 F. Supp. 2d 365 (D. Mass. 2012) ...................................................................12

*Depianti v. Jan-Pro Franchising Intern., Inc.*,
465 Mass. 607 (2013) ...........................................................................................15

*Ebbe v. Concorde Investment Servs., LLC*,
392 F. Supp. 3d 228 (D. Mass. 2019) ...................................................................14

*Juarez v. Select Portfolio Serv., Inc.*,
708 F.3d 269 (1st Cir. 2013) ...................................................................................6

*Kavanaugh v. Trustees of Boston Univ.*,
440 Mass. 195 (2003) ........................................................................................9, 11

*Leavitt v. Brockton Hosp., Inc.*,
454 Mass. 37 (2009) .............................................................................................7, 8

*Ledet v. Mills Van Lines, Inc.*,
97 Mass. App. Ct. 667 (2020).................................................................................11

*Lev. v. Beverly Enters.-Mass., Inc.*,
457 Mass. 234 (2010) ..................................................................................... *passim*

*Moreira v. Citimortgage, Inc.*,
Civil No. 15-13720-LTS, 2016 WL 4707981 (D. Mass. 2016)..........................6, 11

*Mosko v. Raytheon Co.*,
416 Mass. 395 (1993) ....................................................................................8, 10, 15

*Nickerson v. Champion Mort. Co., LLC*,
Civil Action No. 19-10401-NMG, 2019 WL 3546479 (D. Mass. March 11,
2019) ......................................................................................................................14

*Simmons v. Baltimore Orioles, Inc.*,
712 F. Supp. 79 (W.D. Va. 1989) .........................................................................16

*Sires v. Hefferman*,
C.A. No. 10-11993-MLW, 2011 WL 2516093 (D. Mass. June 21, 2011) ...............13

*Stewart Title Guar. Co. v. Kelly*,
   97 Mass. App. Ct. 325 (2020)..................................................................................12

**Statutes**

18 U.S.C. § 1591 ....................................................................................................13

M.G.L. ch. 265, § 50 .............................................................................................13

**Other Authorities**

Fed. R. Civ. P. 8(a) ...............................................................................................13

Fed. R. Civ. P. 12(b)(6).......................................................................................6, 7

## INTRODUCTION

The required deferential reading of the First Amended Complaint in favor of the Plaintiff offers no viable basis, factually or legally, for Plaintiff Jane Doe to sustain any of her claims against Banner Seventeen.[2] Fairly read, the First Amended Complaint alleges a series of purported actions undertaken by "Player Defendants" and other unidentified individuals whom Plaintiff claims were "employed" by the Player Defendants. Distinct from the core allegations against others, Plaintiff overreaches to vicariously include Banner Seventeen as a defendant largely through its role as the Player Defendants' employer, but also through the untenable legal theory that Banner Seventeen "is obliged to exercise reasonable care to ensure players are behaving in a legal and moral manner on and off the court." Regardless of how Banner Seventeen might prefer that players on the team act, no such legal obligation to Plaintiff exists. Nor was Banner Seventeen legally obligated to remove the Player Defendants from the team "for the public good, specifically the women of Boston" simply because Plaintiff asserted claims against them, notwithstanding how baseless those claims might be.

Of the eight counts in the First Amended Complaint, only two directly implicate Banner Seventeen, Count IV for Negligence and Count VI for Unjust Enrichment. Both of these counts, however, lack the factual underpinnings for Plaintiff to move forward, and regardless the legal frameworks for both counts do not impose the duties on Banner Seventeen that Plaintiff presumes exist. The remaining counts, Counts I and II for violations of federal and state sex trafficking laws, Count III for Indecent Assault and Battery, Count V for Intentional Infliction of

---

[2] The Plaintiff names the "Boston Celtics" as a defendant in the case caption and inconsistently refers to the organization in the First Amended Complaint as the "Boston Celtics NBA Basketball Team (Banner Seventeen, LLC)," the "Boston Celtics," and the "Celtics Basketball Team and/or as the Celtics NBA Team Franchise." For the purposes of this Motion, the organization will refer to itself as Banner Seventeen, LLC ("Banner Seventeen").

Emotional Distress, Count VII for Tortious Interference (presumably of a contractual relationship), and Count VIII for a general and undefined Conspiracy, are nominally brought "Against All Defendants" even though Plaintiff fails to identify a single action undertaken or not taken by Banner Seventeen with regard to those counts.

In sum, whatever grievances Plaintiff may have with the individuals described in the First Amended Complaint,[3] none of those articulated grievances involve conduct by Banner Seventeen. Banner Seventeen should not be forced to defend against the Plaintiff's myriad claims emanating from those grievances simply because it employs the Player Defendants. As for the two counts which Plaintiff does level directly against Banner Seventeen, the law does not support the Plaintiff's premise for asserting those claims; *i.e.*, that Banner Seventeen somehow had a legal duty to control the Player Defendants' personal lives on and off the court and/or remove the Player Defendants from the team if they did not behave in a manner acceptable to the Plaintiff.

Plaintiff's claims against Banner Seventeen should be dismissed in their entirety.

## ALLEGED FACTS AND PROCEDURAL BACKGROUND

Plaintiff's First Amended Complaint[4] purports to describe a series of encounters and interactions that she had with several individuals (some of whom remain unidentified), including

---

[3] For example, Person A, the unidentified individual who appears to be the primary target of Plaintiff's ire, isn't even named as a party defendant and is alleged to have been "employed" by the Player Defendants. Plaintiff claims to have been in a relationship with Person A for two years so her failure to identify Person A is intentional. If Plaintiff's First Amended Complaint survives the pleading stage, Plaintiff will certainly need to specifically identify Person A and the other key unnamed individuals in her First Amended Complaint.

[4] Banner Seventeen reserves its rights to dispute many, if not all, of the facts alleged by Plaintiff in her First Amended Complaint. The story she recounts is both surprising and shocking. Many of the actions alleged in the First Amended Complaint are wholly inconsistent with Banner Seventeen's values, and are also inconsistent with Banner Seventeen's understanding of the

Jaylen Brown, Jayson Tatum, and former Celtics player Marcus Smart,[5] whom she collectively

refers to as the "Player Defendants." First Amended Complaint ("FAC"), ¶ 1. The narrative

Plaintiff weaves contains a fair amount of speculation and imprecise language to describe certain

events. And at times Plaintiff only vaguely describes the individuals she asserts were involved in

a given act or what their precise roles and affiliations were. The First Amended Complaint also

contains several stray instances where Plaintiff's use of terms such as "the Defendants" and "the

Celtics" lack the precision necessary to determine which parties she actually means. But when all

of Plaintiff's allegations are fairly read in context with each other, it is apparent that Plaintiff has

not sufficiently alleged any direct role or conduct by Banner Seventeen to sustain her claims

against Banner Seventeen.

Plaintiff alleges that in the Fall of 2021 she "was unknowingly recruited into a sex

trafficking scheme involving the Defendants while in the elevator of [her apartment building]."

FAC, ¶ 26.  Her "recruitment" was orchestrated by "Person A" whom Plaintiff claims befriended

her "under false pretenses" and used "prolonged and deliberate manipulation" to gain her trust

and "exploit[] her vulnerability for profit at the request of the Player Defendants." FAC, ¶ 27

While Plaintiff does on a few occasions describe Person A as someone hired and paid by

all of the Defendants (FAC, ¶¶ 27, 31, 32), that does not appear to be what she actually meant.

_____

named players' character as the team has come to know them over the past eight-plus years.
There are also many suggested inferences drawn with regard to Banner Seventeen that are simply
not true. For example, Banner Seventeen does not employ anyone to manage or facilitate the
players' personal social lives. All that said, Banner Seventeen acknowledges that the law
requires certain of Plaintiff's bald allegations to be accepted as true for purposes of the instant
motion to dismiss.

[5] Marcus Smart was traded to another NBA team on June 22, 2023, and has not been employed
by Banner Seventeen since that date. And while Banner Seventeen's status as the players'
employer does not make it legally or vicariously responsible for any of the players' personal
conduct alleged by Plaintiff, to the extent any of Plaintiff's allegations against Mr. Smart
occurred after June 22, 2023, Banner Seventeen was not even his employer after that date.

Throughout the First Amended Complaint, Plaintiff is clear that her allegations against Person A are that he was paid and employed by the Player Defendants, ***not Banner Seventeen***. *See*, *e.g.*, FAC, ¶ 27 (Person A acting "at the request of the Player Defendants"); ¶ 28 (Person A told Plaintiff he was "working" for the Celtic Basketball Players"); ¶ 31 ("Person A, who was employed by all and/or some of the Defendants, was paid by the Player Defendants to manipulate Plaintiff … ); ¶ 34 ("The Player Defendants paid Person A, who was employed by them" and "At the request of the Player Defendants, Person A, who was employed by them . . ."); ¶ 35 ("The Player Defendants paid and employed Person A" and "At the request of the Player Defendants, Person A, who was employed by the Player Defendants, …"); ¶ 36 ("Affiliates of the Player Defendants told Plaintiff … that they bring women that are now understood to be sex trafficked women to Miami and the cities were [sic] the Celtics are playing in away games."); ¶ 37 ("The Player Defendants paid Person A, who was employed by them, …" and "At the employment of Player Defendants, Person A comforts Plaintiff … and reenforced a false sense [] of trust while manipulating her  . . ."); ¶ 38 ("The Player Defendants paid and employed Person A…" and "At the employment of Player Defendants, Person A comforted Plaintiff [] and reenforced a false sense [] of trust while manipulating her  . . ."); ¶ 39 ("The Player Defendants paid and employed Person A…" and "At the employment of the Player Defendants, Person A comforted Plaintiff [] and reenforced a false sense [] of trust while manipulating her  . . ."); ¶ 41 ("The Player Defendants continued to pay and employ Person A to fake a relationship with Plaintiff"); and ¶ 43 ("Person A attempted to tell Plaintiff . . . that work he does for the Celtic's [sic] players is 'club promoting'").

Plaintiff claims that Person A was directly involved in bringing her to "a private Celtics team party . . . were [sic] the Player Defendants were" at a Boston bar in late January or early

February 2022, where Plaintiff claims to have been "gang raped in the back by some and/or all Player Defendants." FAC, ¶ 30. While it is not clear which of the Player Defendants Plaintiff is implicating, significantly, Plaintiff does not and cannot allege that Banner Seventeen played any role in organizing any such party or the alleged sexual assault.

Plaintiff also alleges she was in a "sexual" "dating" relationship with Person A "under false pretenses" for "2 years" and that she was "completely under the control of the Defendants through the use of Person A." FAC, ¶¶ 32, 41. Plaintiff goes on to allege that the entirety of her interactions with Person A were "manufactured and exploited" and that she "did not know that the Defendants were paying Person A to do this." FAC, ¶ 32. But once again, when read in full context with the other allegations that Person A was employed and paid by the Player Defendants, the clear implication is that the stray reference to "Defendants" in this paragraph is intended to mean the Player Defendants, not Banner Seventeen.

Plaintiff next alleges she interacted with "two other individuals identifying themselves as 'club promoters for the Celtics'" and that they were in a "similar situation with girls as Person A." FAC, ¶ 45. She also alleges that one of these two "'club promoters (Person B)'" was involved in a "sex trafficking scheme" where "unknowing women were lured into their network through false promises and false pretenses" and "were sold to the Player Defendants and/or affiliates." FAC, ¶ 46. Plaintiff goes on to allege that Person B told her that "I set up girls [and Celtic Players]" but she does not allege Banner Seventeen had any involvement with Person B's activities,[6] FAC ¶¶ 45, 46, and therefore she cannot sustain a claim that Banner Seventeen should somehow be responsible for the actions of Person B.

---

[6] Nor could she credibly make this allegation, since Banner Seventeen does not employ anyone whose job responsibilities are even remotely similar to what Plaintiff describes.

Finally, Plaintiff describes a series of interactions she had with yet another unidentified individual related to a day trading account. FAC, ¶¶ 49-51. It is not clear what, if any, claim this collection of allegations is intended to support, but what is clear is that Plaintiff makes no allegations that Banner Seventeen played any role in the alleged interactions regarding the day trading account.

## ARGUMENT

## I.   STANDARD OF REVIEW

To overcome a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must set forth factual allegations sufficient to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff's "obligation to provide the grounds of h[er] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. In deciding a motion to dismiss, this Court must separate "factual allegations … from conclusory statements in order to analyze whether the former, if taken as true, set forth a plausible, not merely a conceivable, case for relief." *See Juarez v. Select Portfolio Serv., Inc.*, 708 F.3d 269, 276 (1st Cir. 2013). As such, there is no requirement that "a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." *Moreira v. Citimortgage, Inc.*, Civil No. 15-13720-LTS, 2016 WL 4707981, at *2 (D. Mass. 2016). Rather, "[d]ismissal for failure to state a claim is appropriate when the pleadings fail to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Id.* Here, Plaintiff's putative claims against Banner Seventeen should be dismissed in their entirety because they fail to state plausible claims for relief.

## II.   PLAINTIFF'S TWO CLAIMS SPECIFIC TO BANNER SEVENTEEN SHOULD BE DISMISSED BECAUSE PLAINTIFF WAS NOT OWED A LEGAL DUTY AND NO BENEFIT WAS EVER CONFERRED ON BANNER SEVENTEEN

Nowhere in Plaintiff's First Amended Complaint does she allege any legally specialized relationship between her or the individuals and Banner Seventeen, which is a necessary predicate for both of her claims against Banner Seventeen. Only two of Plaintiff's eight purported causes of action – for negligence and unjust enrichment – pertain to direct action (or inaction) that Banner Seventeen purportedly undertook as an organization. Even assuming Plaintiff's strained allegations about Banner Seventeen regarding these claims were true (which they are not), she still fails to plead a plausible entitlement to relief against Banner Seventeen.

### A.   Plaintiff's Claim for Negligence (Count IV) Should Be Dismissed Because Banner Seventeen Did Not Owe Plaintiff a Legal Duty

Plaintiff's claim for negligence against Banner Seventeen must plausibly allege that: (1) Banner Seventeen owed her a duty of care; (2) Banner Seventeen committed a breach of that duty; (3) damage resulted to Plaintiff; and (4) there was a causal relation between the breach of duty and the damage. *See, e.g., Leavitt v. Brockton Hosp., Inc.*, 454 Mass. 37, 39 (2009). With regard to the first element, the question of "[w]hether a duty of care exits is a question of law ... and an appropriate subject of a motion to dismiss pursuant to rule 12(b)(6)." *Id.* at 40. Here, Plaintiff's claim for negligence fails as a matter of law because she has not – and cannot – allege plausibly that Banner Seventeen owed her a duty of care in any context.

Plaintiff's allegations focus almost exclusively on the purported acts committed by the Player Defendants and other unidentified individuals, "Person A" and "Person B." Banner Seventeen has no legal duty to Plaintiff to control any of them in the ways Plaintiff suggests. In Massachusetts, "[a]s a general principle of tort law, there is no duty to control the conduct of a third person so as to prevent him from causing physical harm to another." *Lev. v. Beverly*

*Enters.-Mass., Inc.*, 457 Mass. 234, 242 (2010). It is only in the "narrowly prescribed"

circumstance where a "special relationship exists between the person posing the risk and the one

who can prevent the harm" that a legal duty to prevent third-party wrongdoing may be

recognized. *See id.*; *see also Mosko v. Raytheon Co.,* 416 Mass. 395, 400-01 (1993) ("Although,

as a general rule, there is no duty to protect others from the negligent or wrongful acts of third

parties, based on social values and customs, such a duty may be premised on the existence of a

special relationship between the negligent person and the person or entity on whom it is sought

to impose liability.").

    Here, Banner Seventeen had no special relationship or connection with either Person A or

Person B to create any duty for Banner Seventeen to prevent harm to Plaintiff. Persons A and B

– whoever they are – were not employed by Banner Seventeen. Rather, Plaintiff's own

allegations suggest that Persons A and B were employed and/or paid (if at all) by the "Player

Defendants." *See, supra,* at p. 3-4; FAC, ¶¶ 27, 28, 31, 32, 34, 35, 37-39, 41, 43, 45, 46. In sum,

whether her allegations are true or not, Plaintiff cannot claim Banner Seventeen had a duty to

protect her from the behavior of Person A or Person B, because Banner Seventeen had no

relationship, let alone a special relationship, with those complete strangers to its organization.[7]

---

[7] The same would also be true to the extent Plaintiff alleges she was harmed by an "affiliate or
friend" of the "Defendants" who allegedly inquired about her day trading activities. *See* FAC, ¶¶
49-50 ("...another affiliate employed by all or some of the Defendants reached out to [Plaintiff]
several times about how her day trading development was going ... Within a few days, an
affiliate and friend of the Defendants contacted [Plaintiff] and in the conversation appeared
disingenuous to the point of subtly triggered about the success the Plaintiff had in getting
approved to trade the large amount she had been trading and the success she had in her recent
trades."). Significantly, it is entirely unclear how Banner Seventeen as an organization could
have a "friend," and even less clear how or why it would have had a duty under the law to
prevent this unidentified "friend" from talking to Plaintiff about her day trading activities. In
context, then, it appears that Plaintiff's use of the term "Defendants" was not intended to include
Banner Seventeen.

*See, e.g., Leavitt v. Brockton Hosp., Inc.*, 454 Mass. 37, 40-41 (2009) ("We have not previously recognized, and do not now recognize, a duty to a third person of a medical professional to control a patient ... arising from any claimed special relationship between the medical professional and the patient."); *Kavanaugh v. Trustees of Boston Univ.*, 440 Mass. 195, 202-03 (2003) (finding "no relationship ... special or otherwise" between university and injured player on opposing university's basketball team) ("Here, the university did not recruit [opposing player]; [opposing player] did not depend on the university nor the university on him for any benefit; and the university did not exert any form of control or influence over [opposing player], or affect his ability or motive to protect himself.").

Nor is a different result required to the extent Plaintiff alleges that Banner Seventeen should have protected her from misconduct purportedly committed by one or more "Player Defendants." Although the employer/employee relationship is a special relationship that can potentially give rise to a duty of care in appropriate circumstances, such a duty exists only where "the employment facilitates the employee's causing harm to third parties." *See Lev*, 457 Mass. at 243-44. "Employment facilitates harm to others when the employment provides the employee access to physical locations, such as the place of employment, or to instrumentalities, such as a police officer carrying a concealed weapon while off duty, or other means by which to cause harm that would otherwise not be available to the employee." *See id.* at 244 (citing to Restatement (Third) of Torts: Liability for Physical Harm § 41 (Proposed Final Draft No. 1, 2005)). Here, Plaintiff was owed no duty under these principles because nothing about Banner Seventeen's employment of the Player Defendants could have possibly facilitated the type of misconduct alleged by Plaintiff.

Aside from their purported association with Person A and Person B (discussed, *supra*), the sum total of wrongdoing alleged against the Player Defendants is that "some and/or all" of them "gang raped" Plaintiff at a private restaurant (Society on High Street) in January or February 2022. *See* FAC, ¶ 30. This one-sentence allegation falls far short of stating a plausible claim for negligence against Banner Seventeen. The reason why is simple. Although Plaintiff contends in sweeping terms that Banner Seventeen was legally obligated "to ensure the [Player Defendants] are behaving in a legal and moral manner *on and off the court*," *see id.*, ¶ 62 (emphasis supplied), Massachusetts courts have never imposed a duty on an employer like Banner Seventeen to police the non-basketball (*i.e.*, social) activities of its employees in a place where they do not report to work (*i.e.*, a private restaurant). To hold otherwise would place impossible burdens on employers to monitor the private lives of their employees. *See, e.g., Lev*, 457 Mass. at 243 ("Where two employees meet at a restaurant to socialize and discuss work-related matters, an employer cannot be expected to foresee that it should take affirmative action to protect all potential plaintiffs from an employee's misbehavior, and could not anticipate harm to such plaintiffs from a failure to do so."); *Mosko*, 416 Mass. at 403 (employer had no duty to prevent employee from becoming overly intoxicated at employer-sponsored event at private restaurant where employees "purchased their own drinks from a cash bar" and there was no evidence that employer "had any control over the manner in which employees of [the private restaurant] performed their bartending duties.").

Equally unavailing is any suggestion by Plaintiff that the alleged "gang rape" was otherwise reasonably foreseeable by Banner Seventeen. Although Plaintiff alleges vaguely that Banner Seventeen was "directly notified" about unspecified "behavior" regarding the Player Defendants that was purportedly "common knowledge in the community," *see* FAC, ¶ 62, the

First Amended Complaint fails to provide any details whatsoever about when this notice was allegedly communicated, what was said, and to whom. No legal duty can be inferred from these "conclusory" and "generalized" allegations, *see Moreira*, 2016 WL 4707981, at \*2, particularly where, as here, Plaintiff makes no allegation that she communicated with Banner Seventeen before the alleged sexual assault she claims occurred in January or February of 2022.

Moreover, even assuming, *arguendo*, that Plaintiff did notify someone about some type of questionable behavior in the Player Defendants' personal lives, that still would not have been enough to create a legal duty on the part of Banner Seventeen to monitor or regulate social behavior having nothing to do with the professional (*i.e.*, basketball) activities of the Player Defendants. *See*, *e.g.*, *Ledet v. Mills Van Lines, Inc.*, 97 Mass. App. Ct. 667, 672 (2020) (employer's negligence in failing to conduct employee background check "too attenuated" from harms suffered by plaintiff to establish liability where employee's "criminal acts, committed while [employee] was off duty and not engaged in the work for which [defendant] employed him, against a person with whom [defendant] held no commercial or other relationship, was not a sufficiently foreseeable result of [defendant's] hiring of [employee] or its decision to allow him to drive a truck incident to the move to which he was assigned."); *see also Kavanaugh*, 440 Mass. at 203 (finding physical assault during basketball game unforeseeable because "foreseeability must mean something more than awareness of the ever-present possibility that an athlete may become overly excited and engage in physical contact beyond the precise boundaries of acceptably aggressive play" and "neither the university nor its coach had any reason to foresee that [the perpetrator] would engage in violent behavior.").

Given the clear and unassailable legal thresholds that Plaintiff's negligence claim does not and cannot meet, it must be dismissed as a matter of law.

B.      Plaintiff's Claim For Unjust Enrichment (Count VI) Should Be Dismissed
        Because Plaintiff Did Not Confer Any Benefit On Banner Seventeen

The only other cause of action in the First Amended Complaint alleging direct action by

Banner Seventeen is Plaintiff's putative claim for unjust enrichment, which asserts in conclusory

fashion that Banner Seventeen "benefited from facilitating" unspecified "behavior" to the extent

"it kept the Boston Celtics in the NBA Finals...."  *See* FAC, ¶ 65; *see also id.* ("The Boston

Celtics have financially and otherwise benefited as a result of these acts or omissions."). These

vague and incoherent allegations fail to allege a plausible claim for relief.

To state a claim for unjust enrichment, "a plaintiff must prove that (1) it conferred a

measurable benefit upon the defendant; (2) it reasonably expected compensation from the

defendant; and (3) the defendant accepted the benefit with the knowledge, actual or chargeable,

of the plaintiff's reasonable expectation." *Stewart Title Guar. Co. v. Kelly*, 97 Mass. App. Ct.

325, 335 (2020). Here, there is no allegation – nor could there be – that *Plaintiff* conferred a

benefit on Banner Seventeen, let alone that Banner Seventeen accepted that benefit with

knowledge that Plaintiff expected compensation. To the contrary, to the extent Plaintiff alleges

Banner Seventeen benefitted from the participation of some of the Player Defendants in the NBA

Finals, that benefit would have been conferred by the players themselves. It could not have been

conferred *by Plaintiff* because she had no commercial relationship with Banner Seventeen and

did not personally provide services or anything else of value to Banner Seventeen. Plaintiff's

claim for unjust enrichment therefore fails as a matter of law. *See, e.g., Blake v. Professional

Coin Grading Serv.*, 898 F. Supp. 2d 365, 390 (D. Mass. 2012) (granting motion to dismiss

unjust enrichment claim where allegations "fail[] to state that the benefit was 'conferred upon the

defendant *by the plaintiff.'"*) (internal citations omitted) (emphasis in original).

**III.     PLAINTIFF'S REMAINING CLAIMS AGAINST BANNER SEVENTEEN SHOULD BE DISMISSED BECAUSE BANNER SEVENTEEN IS NOT VICARIOUSLY LIABLE FOR THE CONDUCT ALLEGED**

The remaining causes of action[8] set forth in Plaintiff's First Amended Complaint are not asserted specifically against Banner Seventeen, and do not allege direct action (or inaction) by the organization. Instead, these putative causes of action lump Banner Seventeen into a group of undifferentiated "Defendants" against whom Plaintiff seeks relief. This generalized pleading fails to satisfy the baseline notice requirements of Fed. R. Civ. P. 8(a), and, in any event, also fails to assert any plausible claim that Banner Seventeen should be held vicariously liable for the acts of its employees.

> A.     Plaintiff Has Failed to Meet the Notice Requirements of Fed. R. Civ. P. 8(a)

Pursuant to Fed. R. Civ. P. 8(a), a statement of claim "must 'at least set forth minimal facts as to who did what to whom, when, where and why.'" *See Sires v. Hefferman*, C.A. No. 10-11993-MLW, 2011 WL 2516093, at *4 (D. Mass. June 21, 2011). For this reason, "a plaintiff cannot 'lump' defendants together when it cannot be reasonably inferred that all of the defendants were involved in the alleged misconduct, or it is otherwise not clear to which defendant or defendants the plaintiff is referring." *See id.*

Here, the First Amended Complaint does exactly what Rule 8(a) prohibits. Plaintiff has alleged a variety of causes of action against "all Defendants" without differentiating, for example, which conduct is allegedly attributable to Banner Seventeen as opposed to Person A, Person B, or the Player Defendants. *See, e.g.,* FAC, ¶¶ 59-60 (attempting to state claim for

---

[8] Sex Trafficking in Violation of 18 U.S.C. § 1591 (Count I); Sex Trafficking in Violation of M.G.L. ch. 265, § 50 (Count II); Indecent Assault and Battery (Count III); Intentional Infliction of Emotional Distress (Count V); Tortious Interference (Count VII); and Conspiracy (Count VIII).

assault and battery against "all Defendants" by "repeat[ing] and realleg[ing] the foregoing allegation[s] in all of the preceding paragraphs as if fully set forth herein."); ¶ 63 (same with respect to putative claim for intentional infliction of emotional distress); ¶ 66 (same with respect to putative claim for tortious interference); ¶ 67 (same with respect to claim for conspiracy). Plaintiff's generalized pleading should therefore be dismissed because "[t]here are no allegations concerning each individual defendant's actions that are sufficient to give each 'defendant fair notice of what the ... claim is and the ground upon which it rests.'" *Nickerson v. Champion Mort. Co., LLC*, Civil Action No. 19-10401-NMG, 2019 WL 3546479, at *3 (D. Mass. March 11, 2019) (internal citations omitted) (dismissing *pro se* complaint where "claims are primarily asserted collectively against the Defendants," making it "virtually impossible to cull out the causes of action asserted against each of the Defendants separately.").

B.     <u>Banner Seventeen Is Not Vicariously Liable For the Conduct of Person A, Person B, or the Player Defendants</u>

It is self-evident that Banner Seventeen, as an organization, could not have sexually assaulted Plaintiff or engaged in any of the other specific acts Plaintiff characterizes as sex trafficking. Thus, although her First Amended Complaint is not styled in these terms, in order for Banner Seventeen to be held liable for claims where it did not participate directly in the underlying behavior, Plaintiff must allege plausibly that Banner Seventeen is vicariously liable for the acts of one or more of its employees. The First Amended Complaint falls far short of meeting this burden.

As described in Section II.A, *supra*, Banner Seventeen did not employ Person A or Person B (whoever they are). Nor does Plaintiff allege they were employed by Banner Seventeen. Banner Seventeen therefore cannot be held vicariously liable for the alleged wrongdoing of those persons, and Plaintiff's claims must be dismissed to the extent they attempt

to impose liability on Banner Seventeen on that basis. *See, e.g., Ebbe v. Concorde Investment Servs., LLC*, 392 F. Supp. 3d 228, 237 (D. Mass. 2019) (plaintiff must establish that "an employer-employee relationship existed" in order to prevail on claim that employer is vicariously liable); *Depianti v. Jan-Pro Franchising Intern., Inc.*, 465 Mass. 607, 614-15 (2013) ("Generally, vicarious liability may be imposed where 'the relation of master and servant existed at the time the plaintiff was injured....'") (internal citations omitted).

Plaintiff's claims are likewise deficient to the extent they seek to impose liability on Banner Seventeen for the acts of the Player Defendants. "Under the doctrine of *respondeat superior*, 'an employer, or master, should be held vicariously liable for the torts of its employee, or servant, committed within the scope of employment.'" *Lev*, 457 Mass. at 238 (internal citations omitted). But the conduct of an employee will only fall "within the scope of employment" if: (1) "it is of the kind he is employed to perform"; (2) "it occurs substantially within the authorized time and space limits"; and (3) "it is motivated, at least in part, by a purpose to serve the employer." *See Mosko*, 416 Mass. at 398.

Plaintiff does not and cannot plead any of those three elements. Again, the sole allegation levied against the Player Defendants is that "some and/or all" of them sexually assaulted Plaintiff at a social gathering in a private restaurant in January or February of 2022. *See* FAC, ¶ 30. Under no circumstances is it plausible for Plaintiff to suggest that the Player Defendants were employed by Banner Seventeen to engage in this type of alleged and unlawful conduct, that the Player Defendants would be somehow "on the clock" if and when they gathered for a social event at a private restaurant, or that the Player Defendants would have been in any way attempting to serve Banner Seventeen's interests if they had ever assaulted Plaintiff as she alleges. *See, e.g., Mosko*, 416 Mass. at 400 ("An employee's voluntary attendance at a social event sponsored by his

employer, like the party here which was off the employer's premises and outside of normal working hours, cannot reasonably be viewed as conduct within the scope of his employment."); *see also Simmons v. Baltimore Orioles, Inc.*, 712 F. Supp. 79, 80 (W.D. Va. 1989) (baseball team not vicariously liable for physical assault perpetrated by players because "[a]t the time of the assault [the players] had left the locker room, and the altercation took place outside the confines of the ballpark ... [the players] were not about any business for [the team], and it would be fatuous to suggest that the fight was within the scope of their employment."). Because the allegations made against the Player Defendants involved purported conduct outside the scope of their employment, Plaintiff cannot seek to hold Banner Seventeen vicariously liable for the acts alleged against the Player Defendants.

## **CONCLUSION**

For the foregoing reasons, Banner Seventeen respectfully requests that this Court dismiss Plaintiff's claims against Banner Seventeen in their entirety.

Respectfully submitted,
BANNER SEVENTEEN, LLC,
By its attorneys,

*/s/ Keith P. Carroll*
Keith P. Carroll, Esq. (BBO #666039)
Benjamin M. McGovern, Esq. (BBO #661611)
Ian Epperson-Temple, Esq. (BBO #699463)
Jamie Ehrlich, Esq. (BBO #713050)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700
*Keith.Carroll@hklaw.com*
*Benjamin.McGovern@hklaw.com*
*Ian.Epperson-Temple@hklaw.com*
*Jamie.Ehrlich@hklaw.com*

## <u>CERTIFICATE OF SERVICE</u>

I, Keith P. Carroll, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 23rd day of August 2024.

/s/ Keith P. Carroll
Keith P. Carroll

Dated:  August 23, 2024