UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 24-11561-LTS |
| | ) |
| JAYLEN BROWN, JAYSON TATUM, MARCUS SMART, and BOSTON CELTICS, | ) |
| | ) |
| Defendants. | ) |

ORDER ON MOTION FOR LEAVE TO FILE
SECOND AMENDED COMPLAINT (DOC. NO. 90)

June 9, 2025

SOROKIN, J.

In this action, Jane Doe, representing herself, seeks to pursue a variety of claims under federal and state law against Jaylen Brown, Jayson Tatum, Marcus Smart, and the Boston Celtics.[1] The Court dismissed her claims in a December 2024 Order but provided her an opportunity to propose an amended pleading that cured the deficiencies the Court had identified. See Doc. No. 89 at 7-9.[2] Doe's motion for leave to amend is now ripe for resolution. For reasons the Court will explain, the motion is DENIED.

I. BACKGROUND

Doe filed this lawsuit on June 17, 2024. Her original Complaint was fifteen pages long, contained sixty-two paragraphs, and brought eight claims against Brown, Tatum, and the Celtics.

---

[1] Within this Order, references to the "Player Defendants" describe Brown, Tatum, and Smart, and references to the "Celtics" describe the organization also called Banner Seventeen LLC.
[2] Citations to "Doc. No. __ at __" refer to the document and page numbering in the header appended to each document by the Court's electronic docketing system.

Doc. No. 1. She initially sought and obtained permission to proceed using a pseudonym and to file her initial pleading under seal. Doc. No. 7. Days later, she moved to unseal the Complaint, citing an unspecified change in the conditions that had led her to request sealing at the outset. Doc. No. 9. On June 21, 2024, Doe amended her complaint, as was her right. See Fed. R. Civ. P. 15(a)(1). Her First Amended Complaint ("FAC") brought the same eight claims, but it included Smart as a defendant and added five paragraphs amounting to two pages more than the original pleading. Doc. No. 12. Soon thereafter, the Court allowed Doe's motion to unseal but, at her request, continued to permit her to use a pseudonym and redact sensitive personal information from her filings. Doc. Nos. 14, 16. Essentially, both the original Complaint and the FAC alleged that the Player Defendants were involved in a sex-trafficking conspiracy, that other individuals involved in the scheme had recruited Doe and made her a victim of the scheme, and that on at least one occasion the Player Defendants had sexually assaulted her at a party. See generally Doc. Nos. 1, 12.

In a trio of motions, the defendants each asked the Court to dismiss the FAC. See Doc. No. 49 (Celtics); Doc. No. 75 (Tatum and Smart); Doc. No. 77 (Brown). The Player Defendants also separately moved for an order requiring Doe to proceed using her own name. Doc. No. 70. Doe opposed all of the motions. Doc. Nos. 54, 73, 80. On December 9, 2024, the Court allowed the motions to dismiss. Doc. No. 89. As to the Celtics, the Court explained that Doe had not plausibly alleged all required elements of the two claims in which she expressly referenced the organization, id. at 2-4, and that her other six claims were "devoid of specific factual allegations directed toward the organization," id. at 4-5. As to the Player Defendants, the Court reasoned that Doe had advanced only conclusory, vague, and generalized allegations that failed to "describ[e] and differentiat[e] the individual actions taken by" each of them. Id. at 5-7.

Considering Doe's self-representation, and noting in particular "the serious nature" of allegations that included an event characterized in the FAC as a "gang rape[]," id. at 6-7, the Court's dismissal ruling was "without prejudice to Doe filing a motion for leave to file a Second Amended Complaint," so long as the motion complied with criteria the Court identified. Id. at 7. As far as Doe's use of a pseudonym was concerned, the Court declined to change course until it assessed the viability of any proposed amended pleading. See id. at 9.

Doe timely moved for leave to amend. Doc. No. 90. Her motion was accompanied by a Proposed Second Amended Complaint ("PSAC") and a supporting memorandum. Doc. Nos. 90-3, 91. In the PSAC, Doe names the same defendants, asserts one claim more than the previous iterations of her pleading, and expands her factual allegations substantially. The PSAC is more than triple the length of its predecessor, exceeding sixty pages and containing 235 paragraphs. Doc. No. 90-3. Each defendant opposed Doe's motion, arguing the amendment was proposed in bad faith, after undue delay, and/or would be futile. Doc. No. 93 (Tatum and Smart); Doc. No. 97 (Celtics); Doc. No. 98 (Brown). Doe replied. Doc. Nos. 100, 101. The motion is now ripe, and the Court resolves it after having reviewed all parties' submissions and relevant parts of the record in this case.[3]

II. LEGAL STANDARD

The Court reviews the PSAC for compliance with the Court's prior Order and the Federal Rules of Civil Procedure. In general, "leave to amend should be 'freely give[n]' in circumstances in which 'justice so requires.'" Amyndas Pharms., S.A. v. Zealand Pharma A/S,

---

[3] Doe subsequently filed a motion seeking leave to change the case caption and update the Court about certain matters. Doc. No. 106. That motion is DENIED. The order of the parties in the caption is immaterial. No procedural rule or customary practice supports adding the "title" of "Victim of Sex Trafficking" to Doe's portion of the caption. And Doe's updates characterizing other cases, which the Court has previously explained are not "related to" this one, Doc. No. 104, have no bearing on the sole question remaining here: the viability of Doe's PSAC.

48 F.4th 18, 36 (1st Cir. 2022) (quoting Fed. R. Civ. P. 15(a)(2)).  "But the largesse that Rule 15(a)(2) contemplates is not without limits."  Calderon-Serra v. Wilmington Trust Co., 715 F.3d 14, 19 (1st Cir. 2013).  "Everything depends on context."  Nikitine v. Wilmington Trust Co., 715 F.3d 388, 390 (1st Cir. 2013).  "A request to amend . . . requires the court to examine the totality of the circumstances and to exercise its informed discretion in constructing a balance of pertinent considerations."  Palmer v. Champion Mortg., 465 F.3d 24, 31 (1st Cir. 2006).  Leave to amend may be denied where the record establishes "undue delay, bad faith, futility, . . . or repeated failure to cure deficiencies."  Id. at 30.

When applying these standards, "a district court is entitled to consider whether the allegations in a proposed amended complaint differ in material ways from those in a prior pleading, particularly when those changes are not adequately explained."  Thomas v. Spaulding, No. 19-cv-11982, 2021 WL 3516474, at *2 (D. Mass. Aug. 10, 2021).  Where such differences exist, leave to amend is properly denied if the plaintiff has delayed in seeking to add crucial facts, despite being aware of them when preparing the prior version, absent "some valid reason for the delay."  Adams v. Gissell, No. 20-cv-11366, 2021 WL 8316261, at *5-6 (D. Mass. Dec. 8, 2021), R. & R. adopted, Endorsed Order, ECF No. 104 (Jan. 12, 2022); see also Republic Maximal LLC v. Romulus Cap. Partners II, LLC, 754 F. Supp. 3d 264, 271 (D. Mass. 2024) (finding leave to file second amended complaint "would not serve the interests of justice" where plaintiff sought "to add new allegations . . . which could and should have been included in" both prior pleadings).  Where a defendant identifies a pleading deficiency via a motion to dismiss, a plaintiff "having the needed information" is not "entitled to wait and see if their amended complaint [i]s rejected by the district court before" seeking to amend their pleading to add such information.  ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 57 (1st Cir. 2008).

4

To assess futility, a court measures a proposed amendment against the familiar standards governing Rule 12 motions. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (requiring "a facially plausible legal claim" supported by "enough factual material to raise a right to relief above the speculative level" (cleaned up)). Because Doe is not represented by counsel, the Court holds her filings "to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Even so, she is not absolved "of having to comply with . . . procedural and substantive law," and her pleading "may not consist entirely of 'conclusory allegations that merely parrot the relevant legal standard.'" Siri v. Town of Hingham, 662 F. Supp. 3d 44, 48 (D. Mass. 2023) (quoting Young v. Wells Fargo, N.A., 717 F.3d 224, 231 (1st Cir. 2013)). Doe, like all other plaintiffs, is "required to plead basic facts sufficient to state a claim." Ferranti v. Moran, 618 F.2d 888, 890 (1st Cir. 1980).

III. DISCUSSION

    A. Claims Against the Celtics

All of Doe's claims stem from conduct she attributes to the Player Defendants and other individuals she accuses of aiding or participating in the overarching sex-trafficking conspiracy she alleges in this case. She includes the Celtics as a defendant in each of her nine claims, however, because it was the Player Defendants' employer during the relevant period, and because she suggests the organization "is liable and responsible for" the Player Defendants' conduct "because of [its] failure to act" on "information at [its] disposal." Doc. No. 90-3 ¶¶ 17, 20; accord id. ¶¶ 25, 185-87, 216-20, 235. In its prior Order, the Court concluded that the FAC failed to state a plausible negligence claim against the Celtics arising from its employees' alleged misconduct. See Doc. No. 89 at 3-5. The PSAC does not cure this deficiency.

As the Court explained previously, "an employer ordinarily is not liable for the conduct of its employees committed outside the workplace which results in harms not reasonably

5

foreseeable to or anticipated by the employer." Id. at 3 (citing Lev v. Beverly Enters.-Mass., Inc., 929 N.E.2d 303, 312 (Mass. 2010)).  In the PSAC, Doe advances two sets of facts that she suggests plausibly show that the Player Defendants' alleged mistreatment of her was reasonably known or knowable—and, therefore, preventable—by the organization.  First, Doe alleges that, on "dozens of" occasions during the three- or four-year period she describes, "a high level executive" working for the Celtics saw "at least one part of a major sex trafficking element(s) being committed against her" in tunnels beneath "the TD Garden Complex."  Doc. No. 90-3 ¶¶ 25-26.  Second, Doe claims that she went to the organization's headquarters "at least" three times in 2024 seeking "to discuss the abuses of" the Player Defendants, but that she was turned away each time "because of 'the NBA Playoffs.'"  Id. ¶ 27.  These assertions appeared nowhere in the FAC.  Cf. Doc. No. 12-1 ¶ 62 (alleging organization "was directly notified because the behavior was common knowledge in the community").  Nor did Doe include them in her opposition to the Celtics' motion challenging the FAC.  See Doc. No. 54; see also Doc. Nos. 53, 74 (seeking to supplement pleading with other facts and law but not mentioning executives having witnessed portions of alleged misconduct).  That alone calls into question their plausibility, raises the specter of undue delay, and undermines Doe's request to amend insofar as her claims against the Celtics are concerned.

In any event, neither set of new allegations supports a plausible assertion of employer liability here.  The first set is speculative, vague, and conclusory.  Doe acknowledges that the TD Garden Complex includes an apartment building and various other businesses, and that the underground parking garage and tunnels provide connections and access to individuals traveling to and from those businesses (i.e., not exclusively high-level Celtics executives).  See Doc. No. 90-3 ¶¶ 46-47.  She only vaguely describes the people she speculates were Celtics executives,

6

and she does not describe in any detail what the individuals supposedly saw or when, within a multi-year window of time, they supposedly saw it. The only specific description she offers of something a person appearing to be an executive saw in the tunnels was Doe "sitting on the ground with her dog crying." Id. ¶ 26. Though a concerned stranger might ask such a person if they were okay, the law does not require such an inquiry, and observing this behavior would not reasonably put any person on notice of a sex-trafficking offense. None of the interactions with the Player Defendants that Doe describes elsewhere in the PSAC are described as having occurred in the tunnels. See, e.g., id. ¶¶ 128-44. In these circumstances, Doe has not plausibly alleged a viable theory of employer liability arising from observations made in the tunnels.

Doe's second theory fares no better. Essentially, she urges that the Celtics were on notice of the Player Defendants' alleged misconduct—and, therefore, obligated to act or risk liability—because of visits she paid to the organization's corporate office during the 2024 Playoffs. There are two obvious problems with this suggestion. For one thing, on the facts as Doe alleges them, no representative of the Celtics agreed to speak with her, nor did they accept a copy of paperwork she offered describing her allegations. Id. ¶ 27. These facts suggest her visits did not reasonably put anyone on notice of anything. Moreover, Doe describes these visits as having occurred during the 2024 Playoffs, which began after the last specific instance of mistreatment she describes in the PSAC. Compare id. ¶¶ 143-45 (alleging sexual abuse by each Player Defendant in February 2024), with Doc. No. 97 at 10-11 & n.5 (describing temporal problem with this theory). Alleging that the Celtics were notified of the misconduct only after it occurred cannot, as a matter of law, support a plausible claim of employer liability.

Accordingly, the Motion to Amend is DENIED as to Doe's claims against the Celtics. She unduly delayed in advancing new factual allegations, and such allegations would not insulate

7

the pleading from a Rule 12(b)(6) challenge by the Celtics. Also, her unjust enrichment claim against the organization continues to suffer from the same defect the Court identified in its prior Order. Doc. No. 89 at 4. Moreover, the same problems that justify denying Doe's motion as to the Player Defendants—which the Court will explain in the next section—would also lead it to deny the motion as to the Celtics.

B. <u>Claims Against the Player Defendants</u>

In the PSAC, as in both previous pleadings, the Player Defendants are the central focus. Though Doe has added more detailed factual allegations in some respects, those changes have not cured the fundamental deficiencies that led to the dismissal of the FAC when it comes to plausibly pleading the elements of the claims she advances. In addition, rather than fleshing out the facts surrounding the events outlined in the FAC, Doe has expanded her allegations to include numerous additional encounters, without explaining why such facts were absent from her prior pleadings. Notwithstanding the serious nature of the claims Doe endeavors to bring, the totality of circumstances here persuades the Court to deny her request to amend. This is so for three reasons.

<u>First</u>, the PSAC contains many allegations that are neither short nor plain and, therefore, fails to comply with Rule 8. In fact, a comparison of the PSAC to the prior iterations of Doe's pleading suggests that her allegations have trended in the wrong direction for Rule 8 purposes. A few examples from the PSAC make the point.[4] Consider paragraph 36, which is neither short nor plain:

> None of the Defendants were ever suppose to have anything to do with the Plaintiff's tenancy or development, and they were not given permission to interfere with the Plaintiff's development or life at all. The Plaintiff had a right to be released from the hold the Defendants put on her without harm, and there was a refusal to

---

[4] Each example quoted is reproduced here exactly as written in the PSAC, including any spelling or grammatical errors and typeface changes.

> do so. When asked to stop, the actions against the Plaintiff continued in conjunction with stronger efforts to silence the Plaintiff. The view in the Plaintiff's apartment is a source of happiness and motivation for the Plaintiff that the Plaintiff appreciates and grew to depend on. When the Plaintiff moved to the Alcott Apartments, she was able to keep her view, plus more in a corner unit facing the same direction and on a higher floor. The Player Defendants continued to attempt to interfere with the Plaintiff and her development with her dog in her apartment, even though the Plaintiff had permission and a desire to develop at her home.

Doc. No. 90-3 ¶ 36. Paragraph 68 suffers from similar problems:

> Based on the information known to and experiences of the Plaintiff, the Plaintiff believes the Defendants' overly complicated means to inflict harm was intended to help protect their behavior from being exposed. Missteps in their processes revealed the intent to the Plaintiff. The Plaintiff believes *through those missteps* the organization was put in a view that the organization prefers to not be in. Instead of stopping, the Plaintiff believes the organization was then *continuously* put in an increasingly *more* detectable view to anyone, and these individuals have *no* intent to stop, no matter the exposure. The Plaintiff believes the plan can be considered to have backfired and a problem, at the organization's discretion. The Plaintiff believes certain individuals are going to continue, regardless of the Plaintiff coming forward, as long as they allowed to take certain measures.

Id. ¶ 68. Paragraph 33 is relatively short, but it is not plain: "The Plaintiff found that the involved individuals operated in syn with each other without the Plaintiff's direction or sharing of information, and as such, only one involved individual was in regular contact with the Plaintiff per interval of time." Id. ¶ 33. As to each of these examples, the Court is hard-pressed to see how the defendants could reasonably answer, let alone prepare to defend against, the allegations. And these are not the only examples. See also, e.g., id. ¶¶ 42, 68, 72, 80, 89, 91, 106, 146, 162-67. Doe's failure to propose a pleading that complies with Rule 8 makes the PSAC vulnerable to a motion to dismiss. For this reason, the amendment is in large part futile.[5]

---

[5] The PSAC is not the only relevant submission from Doe that is challenging to parse. Her reply in support of her motion to amend, which contains repeated references to "world order," is often perplexing. See, e.g., Doc. No. 101 at 8 ("This Civil Action through Civil Procedure seeks to initiate the effects of total deterrence, total restoration, and mandatory restitution to deter and correct the Defendants' negative affect on World Order. This Civil Action serves the Mission of World Order."). None of Doe's arguments that are discernible in the reply aid her in avoiding the Court's determination that she is not entitled to leave to file the PSAC.

9

Second, the PSAC is replete with new allegations that were known to Doe when she drafted both prior versions of her pleading but were not included in either of them. Though the Court declines to infer bad faith from this fact, as the Player Defendants urge, Doc. No. 93 at 10-11, it does conclude that the withholding of such allegations until now evidences undue delay that warrants denial of Doe's motion. The newly incorporated allegations that Doe neglected to include in her earlier pleadings concern topics such as: the Player Defendants' alleged use of sports-betting platforms in connection with the sex-trafficking operation she describes, e.g., Doc. No. 90-3 ¶ 100; the alleged use of TD Garden Complex tunnels and parking garages to further the operation, and the presence of Celtics executives for sex-trafficking-related conduct, e.g., id. ¶ 20; a performance-enhancing motive behind the defendants' alleged sex-trafficking activities, e.g., id. ¶¶ 58-66; the alleged transportation of Doe to Rhode Island for sex-trafficking purposes, e.g., id. ¶ 103; the alleged use or threat of police involvement if Doe did not acquiesce, e.g., id. ¶ 120; specific interactions with each Player Defendant that were not mentioned previously, e.g., id. ¶¶ 125-26, 146, 148; and allegations of manipulated game statistics by at least one Player Defendant, e.g., id. ¶ 154.

Doe has not explained her failure to include such allegations—facts she plainly would have known all along—in her earlier pleadings. This provides a second reason that justifies denying the pending motion, especially where the Player Defendants moved to dismiss the FAC and highlighted the inadequacy of the facts Doe had articulated. Doe opposed the defendants' motions, Doc. Nos. 54, 80, and, though she sought leave to incorporate a "Memorandum of Law and Facts" into her pleading, Doc. No. 74, that memorandum contained none of the above-described allegations either. See Doc. No. 53. She acted at her peril in withholding the

necessary facts until after the Court's ruling on the defendants' motions. See ACA Fin. Guar. Corp., 512 F.3d at 57.

Third, even with the expanded factual allegations, the PSAC continues to be susceptible to a Rule 12(b)(6) challenge, as it fails to state in plausible, non-conclusory terms the elements of the causes of action Doe seeks to bring. To be sure, Doe has supplemented her factual allegations in certain areas (for example, by identifying "Person A" and providing a first name for at least one other person she alleges was involved). See Doc. No. 90-3 ¶¶ 35, 73. When it comes to the conduct at the heart of her claims, however, the specificity of Doe's factual allegations varies. The only events she describes in any detail are those that transpired before or after the abuse she alleges. She describes the abuse itself using only conclusory language that parrots the legal elements of the claims she asserts.

For example, Doe describes in three separate page-long paragraphs discrete events involving each Player Defendant. See id. ¶¶ 124-26. In each, Doe paints a picture of certain specific circumstances preceding or following "abuse" or a "commercial sex act." See id. ¶ 124 (identifying location, song clips being played, and specific movements made by Brown and other individuals); id. ¶ 125 (identifying floor of bar, actions of dog, and comment by Tatum that Doe overheard); id. ¶ 126 (describing extended interactions with "Person C" at different locations and brief interaction with Smart outside gas station). As to timing, however, Doe is less specific. See id. ¶¶ 124-26 (placing events "in or around 2002,"[6] "during the 2023 NBA Playoffs," and "during the 2022 NBA Playoffs"). And the relatively brief portions of each of these paragraphs alleging the most crucial occurrences—the "abuse" or "commercial sex" from which all of Doe's claims arise—resort to "merely parrot[ting] the relevant legal standard." Young, 717 F.3d at

---

[6] The Court assumes this is an error, and that Doe meant to refer to 2022.

231. In paragraph 124, the critical allegation is as follows: "The Plaintiff was then transported to [her apartment building], and fraud, force and coercion was used by Defendant Mr. Brown to engage the Plaintiff in commercial sex acts with him, and Defendant Mr. Brown paid Person A." Such cursory allegations abound in the PSAC, but they do not plausibly support the claims Doe seeks to bring. All of her claims require her "to plead basic facts sufficient to state" plausibly that Doe was a victim of a commercial sex-trafficking operation involving the defendants. Ferranti, 618 F.2d at 890. Though she repeatedly deploys the language of the sex-trafficking statutes she invokes, Doe continues to omit any "basic facts" concerning the details of the actual abuse she attributes to the defendants.[7] As a result, the PSAC would fail in the face of a Rule 12(b)(6) motion by the Player Defendants. Permitting the amendment, then, would be futile for this reason as well.

In sum, Doe's undue delay and her failure (again) "to plausibly allege claims . . . that can withstand scrutiny under the applicable federal pleading standards," Doc. No. 89 at 5, lead the Court to deny her leave to revive this action. Permitting Doe to file the PSAC would be futile and would not serve the interests of justice in these circumstances.

IV. CONCLUSION

Doe has tried and failed three times to state plausible claims against the defendants. Even accounting for her self-representation, the Court finds she is not entitled to a fourth attempt in the circumstances presented here. Doe's Motion for Leave to Amend (Doc. No. 90) is DENIED,

---

[7] What seemed to be the most serious incident referenced in the FAC (an alleged "gang rape" by the Player Defendants, Doc. No. 12-1 ¶ 30) is now described in even less detail. See Doc. No. 90-3 ¶ 130. Further, an adjustment to the timing Doe provides for this event introduces a new plausibility problem. See Doc. No. 98 at 10-11 (comparing new allegation to NBA schedule).

and this action remains DISMISSED.  All parties shall bear their own fees and costs.  The Clerk shall close this case.

                                        SO ORDERED.

                                         /s/ Leo T. Sorokin  
                                        United States District Judge